# **EXHIBIT 1**

Case: 4:22-cv-00394-SPM   Doc. #:  20-1   Filed: 04/27/22   Page: 1 of 18 PageID #: 182

## Finnegan, Kyle

| | |
|---|---|
| **From:** | Mark Blankenship <mark@ott.law> |
| **Sent:** | Monday, April 18, 2022 5:30 PM |
| **To:** | mmohan@tuethkeeney.com; Bush, Charles; Holladay-Crawford, Sloan; Finnegan, Kyle |
| **Cc:** | Joseph Ott; Cierra Randazzo-Scott |
| **Subject:** | [EXT] Samuels-Eng v. Gallagher Bassett - Waiver of the Service of Summons |
| **Attachments:** | Carrie Samuels-Eng - Gallagher Bassett Services - Waiver of Service.pdf; Carrie Samuels-Eng Petition.pdf |

**EXTERNAL EMAIL WARNING!** Use caution with links or attachments. DO NOT provide your credentials!

Good Evening Counsel:

Please find the attached Waiver of the Service of Summons and a copy of the filed Petition.

--

**Mark E. Blankenship Jr.**
*Associate Attorney*
**314-293-3756**
**Ott Law Firm**



3407 South Jefferson Avenue Suite #508
St. Louis, MO 63118

*\*\*NOTICE\*\* This message, including attachments, contains confidential information which may also be legally protected by the attorney-client privilege or attorney work product privileges.  If you are not the intended recipient, promptly delete this message and notify the sender of the delivery error by return e-mail or by calling 314-293-3756.  You may not forward, print, copy, distribute, or use the information in this message if you are not the intended recipient.*

*Consistent with Missouri Bar and Missouri Supreme Court Rules, please be reminded that: 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by any or all computers through which it passes as it is transmitted; and 3) persons not participating in our communication may intercept our communications by improperly accessing either of our computers or another computer unconnected to either of us through which the e-mail has passed.*

\*\*NOTICE\*\* This message, including attachments, contains confidential information which may also be legally protected by the attorney-client privilege or attorney work product privileges. If you are not the intended recipient, promptly delete this message and notify the sender of the delivery error by return e-mail or by calling 314-293-3756. You may not forward, print, copy, distribute, or use the information in this message if you are not the intended recipient.
Consistent with Missouri Bar and Missouri Supreme Court Rules, please be reminded that: 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by any or all computers through which it passes as it is transmitted; and 3) persons not participating in our communication may intercept our communications by improperly accessing either of our computers or another computer unconnected to either of us through which the e-mail has passed.

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

| | |
|---|---|
| Carrie Samuels-Eng ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 4:22-cv-00394 |
| Gallagher Bassett Services Inc. ) | |
| *Defendant* ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To: Joseph A. Ott & Mark E. Blankenship Jr.
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from   04/18/2022  , the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:   04/18/2022

*[signatures: Joe Ott, Mark Edward Blankenship]*

*Signature of the attorney or unrepresented party*

Gallagher Bassett Services Inc.
*Printed name of party waiving service of summons*

Joseph A. Ott & Mark E. Blankenship Jr.
*Printed name*
3407 S. Jefferson Ave. Ste 508
St. Louis, MO 63118
*Address*

joe@ott.law       mark@ott.law
*E-mail address*

(314) 293-3756
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

2111-CC00696

Electronically Filed - St Charles Circuit Div - August 11, 2021 - 06:40 PM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

| | |
|---|---|
| **CARRIE SAMUELS-ENG,** | ) |
| | ) |
|     Plaintiff, | ) Cause No. |
| | ) |
| v. | ) Division No. |
| | ) |
| **GALLAGHER BASSETT SERVICES INC.** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Serve at:** | ) |
|     Registered Agent: | ) |
|         221 Bolivar Street | ) |
|         Jefferson City, MO 65101 | ) |
| | ) |
|     **Defendants.** | ) |

**PLAINTIFF'S PETITION FOR DAMAGES**

COMES NOW, Plaintiff, Carrie Samuels-Eng (hereinafter "*Plaintiff*"), by and through her counsel, for her complaint against Defendant Gallagher Bassett Services Inc. (hereinafter "*Defendant*"), respectfully shows the Court and alleges as follows:

PRELIMINARY STATEMENT

1. This is an action for damages to redress the deprivation of rights secured to Plaintiff by the Missouri Human Rights Act (hereinafter "*MHRA*"), the Americans with Disabilities Act of 1990 (hereinafter "*ADA*") 42 U.S.C. §§ 12101 et seq., and the Family Medical Leave Act (hereinafter *"FMLA"*) 29 U.S.C. §§ 2601 et seq.

2. The unlawful employment practices described herein were committed within the State of Missouri, in Defendant's offices in St. Charles County, Missouri.

3. Prior to filing this action, Plaintiff timely filed her written charge asserting disability discrimination with the Equal Employment Opportunity Commission (hereinafter "*EEOC*") and Missouri Commission on Human Rights (hereinafter "*MCHR*").

4. On or about May 18, 2021, the MCHR issued a Right to Sue. A copy of said Right to Sue is attached hereto and marked as Exhibit "A." Said Exhibit "A" is incorporated herein as though herein set forth in full.

5. On or about June 5, 2021, the EEOC issued a Right to Sue. A copy of said Right to Sue is attached hereto and marked as Exhibit "B." Said Exhibit "B" is incorporated herein as though herein set forth in full.

6. In conformance with law, Plaintiff has filed this action subsequent to the expiration of ninety (90) days from the date of receiving her right to sue letter from the MCHR and within two years after Defendant willfully violated Plaintiff's rights under MHRA.

7. In conformance with law, Plaintiff has filed this action subsequent to the expiration of ninety (90) days from the date of receiving her right to sue letter from the EEOC and within two years after Defendant willfully violated Plaintiff's rights under ADA.

8. In conformance with law, Plaintiff has filed this action within two years after Defendant willfully violated Plaintiff's rights under FMLA.

## PARTIES

9. At all times herein mentioned Plaintiff was a female citizen of the United States and a resident of the County of Saint Charles, State of Missouri.

10. Plaintiff is a person entitled to protection pursuant to the provisions of RSMo. § 213.010(5), or alternatively or conjunctively 42 U.S.C. § 12111(8).

11. Additionally, Plaintiff is a person entitled to protection pursuant to the provisions of 29 U.S.C. § 2611(2)(a).

12. Defendant is an Illinois Corporation who conducts business in the state of Missouri.

13. Defendant was the "employer" of Plaintiff within the meaning of RSMo.

§ 213.010(8) at all times relevant to this action.

14. Furthermore, Defendant was the "employer" of Plaintiff within the meaning of 42 U.S.C. § 12102(5)(A) and within the meaning of 29 U.S.C. § 26114(a).

## FACTS

15. Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs 1-15.

16. At the time of termination of her employment, plaintiff was employed by Defendant as a resolution manager. Plaintiff worked out of the principal office as identified in numbered paragraph 6 above. At all times relevant herein, defendant employs at least 75 individuals.

17. Plaintiff began working for Defendant on February 21, 2017, as a Resolution Manager.

18. Plaintiff's job duties generally included investigating insurance claims to ascertain the extent of liability on behalf of an insurance company. She gathered factual evidence, interviewed claimants and witnesses, to determine the value of a claim.

19. Plaintiff has been diagnosed with multiple sclerosis.

20. Multiple sclerosis (hereinafter "*MS*") is a disease of the brain and spinal cord (central nervous system). In MS, the immune system attacks the protective sheath (myelin) that covers nerve fibers and causes communication problems between your brain and the rest of your body.

21. Plaintiff is an individual with a disability within the meaning of the MHRA and the ADA, who was subjected to discrimination with respect to the terms, conditions or privileges of her employment, because of her disability, record of disability and/or perceived disability in violation of the MHRA and the ADA.

22. Plaintiff's disability inhibits a major life activity.

23. Plaintiff is a member of the class of people intended to be protected by the MHRA and the ADA.

24. Plaintiff was qualified to perform the essential functions of the job.

25. At all times relevant herein, Plaintiff satisfactorily performed her job and met the expectations of Defendant.

26. In the fall and winter of 2019, Plaintiff and her colleagues on the "Michaels Companies, Inc. Account" (hereinafter "*Michaels' Account*") complained to their supervisor, Alexander Milshteyn (hereinafter "*Milshteyn*"), and to the Assistant Vice President, Coy Jacobs, that they were overworked.

27. The "Michaels' Account" was supposed to consist of 5 managers. Due to one manager being capped on the total number of claims and being primary for another client, as well as a team member quitting in September 2019, the team was short-staffed.

28. The "Michaels' Account" managers were regularly working both weekend days, until late at night, and while on vacation.

29. In January of 2020, Mili Chada (hereinafter "*Chada*") began working on the "Michaels' Account", but she had never worked as a resolution manager.

30. Plaintiff was tasked with training Chada.

31. At approximately the same time, Plaintiff's neurologist advised Plaintiff that she needed to limit her working hours to no more than 8 hours a day.

32. Plaintiff typically worked 60+ hours a week and such a workweek functionally prevents and precludes sufficient time for doctors' appointments. However, with a 40-hour-week, Plaintiff can work late or on weekends and still be able to attend follow up doctor appointments.

33. On January 10, 2020, Plaintiff advised her supervisor, Milshteyn, that she needed an accommodation.

34. Milshteyn stated that Plaintiff needed to make the request in writing so he could forward it to his supervisor, Jon Byman, who was the Assistant Branch Manager.

35. On January 14, 2020, Plaintiff e-mailed her request for accommodation to Milshteyn. The request stated:

> As you are aware, I have been having some medical concerns directly related to my neurological condition….my neurologist suggested that immediate reprieve from the extensive hours by working a regular eight-hour day. As such, I am asking for an accommodation to work a normal eight-hour day...

36. By late January, Plaintiff had not received any response to her request for an accommodation, so she followed up with Milshteyn.

37. On January 24, 2020, Plaintiff asked Milshteyn again about the accommodation request.

38. Milshteyn stated that Plaintiff needed to contact Hartford, who was Defendant's long-term and short-term disability insurer.

39. As instructed Plaintiff contacted Hartford but was advised that Hartford does not address/support ADA accommodation requests.

40. Hartford suggested that Plaintiff call Defendant's Human Resource Department, which she did on the same day.

41. Plaintiff then called Defendant's general Human Resource Department, but they refused to help and directed Plaintiff to call her local Human Resource representative Jessica Letson (hereinafter "*Letson*").

42. As instructed, Plaintiff called and left a voicemail for Letson, who was Defendant's Human Resource representative in the St. Louis metropolitan area.

43. After getting the run-around on January 24, 2020, Plaintiff emailed Milshteyn recapping all of the hoops she jumped through in an effort to get an accommodation.

44. Because she could not get a timely accommodation, Plaintiff applied for and received a two-week leave of absence under FMLA.

45. Plaintiff's leave of absence began on or about January 27, 2020.

46. Plaintiff returned to work on or about February 10, 2020.

47. When Plaintiff returned, she discovered that she was being moved off the Michaels' Account.

48. Plaintiff also learned that Rosalyn Harris, who was a Senior Resolution Manager, and Donna Bowden, who was also a Senior Resolution Manager, had quit, and that Milshteyn had given his notice of resignation.

49. Plaintiff was tasked with assisting the new supervisor, Alan Spray (hereinafter "*Spray*"), on the Michaels account.

50. On February 12, 2020, Plaintiff again called the Human Resource Department because her work restriction was not being accommodated and she still had not heard about her accommodation request from January.

51. This time she talked to Karen Cole (hereinafter "*Cole*"), who was the Senior Benefits Specialist / Leave Administrator.

52. Cole advised Plaintiff that the request for an accommodation needed to (a) come from Plaintiff's healthcare provider, (b) be in a sealed envelope and then mailed in another envelope to Cole, (c) so Cole can provide the sealed envelope to Legal Counsel for review.

53. On February 19, 2020, Cole contacted Plaintiff and stated her 8-hour workday restriction would be accommodated.

54. After hearing from Cole, Plaintiff contacted Milshteyn and asked how the accommodation would work. For instance, did Milshteyn want Plaintiff to work certain hours and/or did he want to transfer files?

55. In response, Milshteyn stated, "Accommodation is one thing, performance is another… I don't make you work more than 8 hours."

56. Reading between the lines, Plaintiff understood Milshteyn to be saying that he was not going to limit her workflow in order to limit her work hours; thus, he was not accommodating her medical restriction.

57. Soon after this conversation, Plaintiff spoke with Letson to complain about Milshteyn's failure to grant the accommodation.

58. After Plaintiff recapped her conversation with Milshteyn, Letson did not offer any solution.

59. In early March, Plaintiff began working on the Menards Account.

60. Only two managers, Chada and Josh Stobart, remained on the Michaels account.

61. While on the Menards account, Plaintiff took over the desk of a Senior Resolution Manager.

62. In late April, Plaintiff received a meeting invite for May 1, 2020.

63. On May 1, 2020, on a telephone call with Coy Jacobs and Elaine Burkemper, Plaintiff was informed that there was a 30% reduction in claims and due to having less work, Plaintiff's employment was being terminated.

64. Despite her request, Defendant would not tell Plaintiff the factors that were considered in deciding who would be terminated.

65. Plaintiff also received a letter that stated, "As part of the Company's regular business

operations, we review staffing levels in relation to revenue and margin. Recently, this analysis showed a need to realign the Company's staffing levels to remain competitive. Thus, the Company is making efforts to reduce its work force to meet business challenges and to reduce its costs. In connection with these efforts, the Company is terminating your employment effective May 15, 2020."

STATEMENT OF CLAIMS
COUNT ONE: DEFENDANT VIOLATED THE MISSOURI HUMAN RIGHTS ACT

66. Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs "1." through "65.," inclusive, herein.

67. Defendant's stated reason for Plaintiff's termination was pretext for discrimination based on Plaintiff's actual disability, perceived disability and/or record of disability.

68. Plaintiff's disability or being perceived as having a disability were a motivating factor Defendant taking Plaintiff off of the Michaels' Account.

69. Plaintiff's disability or being perceived as having a disability were a motivating factor in Defendant's failure to accommodate Plaintiff's reasonable accommodation request.

70. Plaintiff's disability or being perceived as having a disability were a motivating factor in Plaintiff's termination.

71. Plaintiff's request for a medical leave of absence due to her disability was a motivating factor in Plaintiff's termination.

72. Plaintiff's discharge was humiliating, emotionally traumatic, and depressing, as it would be to any person in the same circumstances, and she claims and seeks damages for that injury in any sum the jury finds to be reasonable and appropriate.

73. The conduct of Defendants in discharging Plaintiff was willful, wanton, and malicious. It was motivated by hatred, spite or ill will towards Plaintiff, and it was undertaken in

conscious reckless disregard for her rights and the rights and interests of the public that the statutes and regulations herein were designed to protect. Defendants knew and anticipated, or should have known and anticipated, that discharging Plaintiff under these circumstances would cause the emotional and psychological injuries described.

74. As a consequence of Defendants' actions, Plaintiff has suffered, and continues to suffer, emotional and psychological distress, anxiety, stress, embarrassment, humiliation, pain and suffering. Defendants knew or should have known and reasonably anticipated, that discharging Plaintiff under the circumstances heretofore described would cause the emotional and psychological injuries aforesaid.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B. For a money judgment representing punitive damages for Defendant's willful violations of law;

C. For a money judgment representing prejudgment interest, if applicable;

D. That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable MHRA provisions;

E. For lost monies and damages pertaining to out-of-pocket expenses; and

F. For reasonable attorneys' fees; and expenses.

COUNT TWO: DEFENDANT VIOLATED THE MISSOURI HUMAN RIGHTS ACT

75. Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs "1." through "74.," inclusive, herein.

76. Plaintiff alleges that Defendant's unlawful and discriminatory termination of her

employment in retaliation for her filing of a grievance of disability discrimination violate the provisions of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.070., justifying an award, inter alia, of back pay, front pay, interest, benefits, special damages, compensatory and punitive damages against said Defendant.

77. Plaintiff's report of about Milshteyn's failure to grant the accommodation was a motivating factor in Plaintiff's termination.

78. Plaintiff's discharge was humiliating, emotionally traumatic, and depressing, as it would be to any person in the same circumstances, and she claims and seeks damages for that injury in any sum the jury finds to be reasonable and appropriate.

79. The conduct of Defendants in discharging Plaintiff was willful, wanton, and malicious. It was motivated by hatred, spite or ill will towards Plaintiff, and it was undertaken in conscious reckless disregard for her rights and the rights and interests of the public that the statutes and regulations herein were designed to protect. Defendants knew and anticipated, or should have known and anticipated, that discharging Plaintiff under these circumstances would cause the emotional and psychological injuries described.

80. As a consequence of Defendants' actions, Plaintiff has suffered, and continues to suffer, emotional and psychological distress, anxiety, stress, embarrassment, humiliation, pain and suffering. Defendants knew or should have known and reasonably anticipated, that discharging Plaintiff under the circumstances heretofore described would cause the emotional and psychological injuries aforesaid.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

Electronically Filed - St Charles Circuit Div - August 11, 2021 - 06:40 PM

    B.    For a money judgment representing punitive damages for Defendant's willful violations of law;

    C.    For a money judgment representing prejudgment interest, if applicable;

    D.    That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable MHRA provisions;

    E.    For lost monies and damages pertaining to out-of-pocket expenses; and

    F.    For reasonable attorneys' fees; and expenses

## COUNT THREE: DEFENDANT VIOLATED THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. §§12101 et seq.

81.    Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs "1." through "80.," inclusive, herein.

82.    Plaintiff alleges that Defendant unlawfully and discriminatorily terminated Plaintiff's employment on account of her disability or disabilities and said actions violate the provisions of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq., justifying an award, inter alia, of back pay, front pay, interest, benefits, special damages, compensatory and punitive damages against said Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

    A.    For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

    B.    For a money judgment representing punitive damages for Defendant's willful violations of law;

    C.    For a money judgment representing prejudgment interest, if applicable;

    D.    That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file any and all

    reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable ADA provisions;

E.     For lost monies and damages pertaining to out-of-pocket expenses; and

F.     For reasonable attorneys' fees; and expenses.

## COUNT FOUR: DEFENDANT VIOLATED THE AMERICANS WITH DISABILITIES ACT, AS AMENDED, 42 U.S.C. §§12203 et seq.

83.     Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs "1." through "82.," inclusive, herein.

84.     In addition, Plaintiff alleges that Defendant's unlawful and discriminatory termination of her employment in retaliation for her complaining about Milshteyn's failure to grant the accommodation, which was a grievance of non-compliance with the Americans with Disabilities Act violate the provisions of the Americans With Disabilities Act, as amended, 42 U.S.C. §§ 12203 et seq., justifying an award, inter alia, of back pay, front pay, interest, benefits, special damages, compensatory and punitive damages against said Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A.     For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B.     For a money judgment representing punitive damages for Defendant's willful violations of law;

C.     For a money judgment representing prejudgment interest, if applicable;

D.     That this Court retain jurisdiction over this action until Defendant has fully complied with the orders of this Court, and that this Court require Defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable ADA provisions;

E.     For lost monies and damages pertaining to out-of-pocket expenses; and

F.     For reasonable attorneys' fees; and expenses.

COUNT FIVE: DEFENDANT VIOLATED THE FAMILY AND MEDICAL LEAVE ACT

85. Plaintiff restates, realleges and reavers and hereby incorporates by reference any and all allegations of paragraphs "1." through "84." inclusive, herein.

86. Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 et seq. because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Plaintiff's leave.

87. Plaintiff is an FMLA-eligible employee because she was employed by Defendant for prior to requesting FMLA leave and had been employed by Defendant for over 1,250 hours in the twelve-month period prior to her request.

88. At all times herein relevant, Plaintiff was an eligible employee on an approved FMLA leave for a serious health condition under 29 U.S.C. § 2611 (2)(A), and 29 U.S.C. § 2612(a)(l)(A),(D).

89. Prior to requesting FMLA leave, Plaintiff was successfully performing her job duties to the reasonable expectations of Defendant.

90. Plaintiff engaged in conduct protected under the FMLA by requesting and taking medical leave.

91. Plaintiff's attempted and/or actual exercise of her rights under the FMLA was a motivating factor in Defendants' decision to retaliate against and wrongfully terminate Plaintiff in violation of the FMLA.

92. Due to Plaintiff's request for leave under FMLA, Defendant terminated her employment in violation of 29 U.S.C. § 2615(a).

93. In addition, Plaintiff alleges that defendant's unlawful termination or constructive termination of her employment violates the laws of the Family and Medical Leave Act of 1993,

29 U.S.C. §§ 2601 et seq. justifying an award, inter alia, of back pay, interest, special damages (if applicable), and any and all other damages that she is entitled to under law against defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against defendant as follows:

A. For a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts, in addition to tort damages;

B. For a money judgment representing punitive damages for defendant's willful violations of law;

C. For a money judgment representing prejudgment interest, if applicable;

D. Reinstatement and restoration of benefits;

E. For reasonable attorneys' fees, costs, and expenses;

F. That this Court retain jurisdiction over this action until defendant has fully complied with the orders of this Court, and that this Court require defendant to file any and all reports necessary and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable ADA and FMLA provisions;

G. For lost monies and damages pertaining to out-of-pocket expenses; and

H. For further, other, and additional relief as the Court deems proper.

## JURY DEMAND

94. Plaintiff herein demands a trial by jury of all issues in this action.

**McMICHAEL, LOGAN, SCHAEFFER, & GILPIN**

By: */s/ Michelle K. Faron*

J. Clayton Schaeffer, #MO67444
Michelle K. Faron, #MO68058
Attorneys for Plaintiff
12166 Old Big Bend Rd., Suite 99
Kirkwood, MO 63122
(636) 532-1400 Office
(888) 823-1441 Facsimile
clay@mcmichael-logan.com
michelle@mcmichael-logan.com